UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROGELIO SANTIAGO-BAUTISTA,

              Petitioner,              Case No. 16-cv-14488
                                                         Hon. Matthew F. Leitman

v.

MARK McCULLICK,

              Respondent.
_____/

**OPINION AND ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS (ECF #1), (2) DENYING A CERTIFICATE OF APPEALABILITY, AND (3) GRANTING PERMISSION TO APPEAL *IN FORMA PAUPERIS***

Petitioner Rogelio Santiago-Bautista is a state prisoner in the custody of the Michigan Department of Corrections. On December 27, 2016, Santiago-Bautista filed a petition for a writ of habeas in this Court pursuant to 28 U.S.C. § 2254. (*See* ECF #1.) In the petition, Santiago-Bautista challenges his state-court conviction for one count of second-degree criminal sexual conduct, MICH. COMP. LAWS § 750.520c(2)(b). Santiago-Bautista pleaded guilty to that offense, and the state court sentenced him to 10-to-15 years in custody pursuant to a sentence agreement.

Santiago-Bautista raises four claims in his petition: (1) his plea was involuntary because he understood the sentence agreement to be for a term of 10-to-15 *months* in custody, not 10-to-15 years, (2) his trial counsel was ineffective when

counsel advised him to accept a sentence agreement that required the court to impose the maximum possible sentence for a conviction of second-degree criminal sexual conduct, (3) the trial court failed to comply with the Michigan Court Rules during the plea proceeding, and (4) his sentence is disproportionate to the seriousness of his offense. (*See* ECF #1.)

The Court has reviewed Santiago-Bautista's claims and concludes that he is not entitled to federal habeas relief. Accordingly, the Court will **DENY** his petition. The Court will also deny Santiago-Bautista a certificate of appealability. But it will grant him permission to appeal *in forma pauperis*.

# I

Santiago-Bautista appeared before the state trial court for a plea hearing on December 12, 2014. (*See* ECF #8-3.) At the beginning of the plea hearing, the trial court swore in an interpreter for Santiago-Bautista, who speaks Spanish. (*See id.* at Pg. ID 129.) The interpreter swore under oath that she would "accurately, and honestly, and impartially interpret" the proceedings from English into Spanish. (*Id.*) Santiago-Bautista's counsel did not object to the interpreter's qualifications. (*See id.*)

The prosecutor then placed the terms of plea agreement on the record. The prosecutor indicated that Santiago-Bautista was charged with first-degree criminal sexual conduct and that Santiago-Bautista had agreed to plead guilty to the lesser

2

offense of second-degree criminal sexual conduct. (*See id.* at Pg. ID 129-30.) The prosecutor told the trial court that the parties had an "understanding that [Santiago-Bautista] [would] receive a sentence of 10 to 15 years" – a sentence substantially below the "mandatory minimum" of 25 years on the original, first-degree criminal sexual conduct charge. (*Id.* at Pg. ID 130.) Santiago-Bautista's counsel confirmed the terms of the plea agreement. (*See id.*)

The trial court then placed Santiago-Bautista under oath. (*See id.*) Santiago-Bautista first told the trial court that he understood why he was in court. (*See id.*) Santiago-Bautista also said that he understood the charge to which he was pleading guilty, that the offense carried a maximum penalty of 15 years in custody, and that upon his release, he would be required to register for lifetime electronic monitoring. (*See id.*) The trial court specifically asked Santiago-Bautista if he understood that the maximum penalty for the crime that he was pleading guilty to was 15 years, and Santiago-Bautista answered, "Yes, your Honor." (*Id.* at Pg. ID 131.) Santiago-Bautista also indicated that he understood his guilty plea would result in certain "immigration consequences," including potential deportation. (*Id.*) Finally, the trial court informed Santiago-Bautista of all the trial and appellate rights that he would be waiving by entering his guilty plea, and Santiago-Bautista said that he understood those rights. (*See id.* at Pg. ID 131-32.)

The trial court then reiterated the terms of the plea agreement, including the agreed-upon term of 10-to-15-years of imprisonment:

> The plea agreement as I understand it is as follows: Upon your plea to criminal sexual conduct in the second degree, the prosecution attorney will not pursue criminal sexual conduct in the first degree and in addition you will receive the following sentence. You will serve a minimum of 10 years of incarceration in the Michigan Department of Corrections and the maximum penalty you face is 15 years.

(*Id.* at Pg. ID 132.)

Santiago-Bautista told the trial court that he understood the terms of that agreement, and he said that he did not have any questions about the agreement. (*See id.*) He also affirmed that the plea agreement placed on the record was the complete agreement, that no threats were made to him that caused him to plead guilty, that he understood he was giving up any claim that his plea was the result of any promises or threats that were not disclosed at the hearing, and that his plea was free and voluntary. (*See id.* at Pg. ID 133.)

When the trial court asked Santiago-Bautista "how do you plead to the charge of criminal sexual conduct in the second degree, culpable or no [sic] culpable," he answered, "guilty, your Honor." (*Id.* at Pg. ID 133-34.) Santiago-Bautista and the Court then head the following colloquy:

> The Court: What did you do that makes you guilty of criminal sexual conduct in the second degree?

> The Defendant: On August 4 or this year, I went to the house of Jennifer Viveros. I kiss her and I touch her groin area.
>
> The Court: What was the name of the victim?
>
> The Defendant: Jennifer Viveros.
>
> The Court: Was she under the age of 13?
>
> The Defendant: Yes, your Honor.
>
> The Court: Did you touch her in her vaginal area?
>
> The Defendant: Yeah, right in the groin.
>
> The Court: Between her legs in her private area?
>
> The Defendant: Yes, your Honor.
>
> The Court: Did you touch her above her clothing or underneath her clothing?
>
> The Defendant: Under her clothing.
>
> The Court: Under her clothing?
>
> The Defendant: Under her shorts.
>
> The Court: Okay. Did you do that for a sexual purpose or sexual gratification?
>
> The Defendant: Yes, your Honor.
>
> The Court: And how old are you, sir?
>
> The Defendant: Twenty-six, you Honor.

(*Id.* at Pg. ID 134-35.)

The trial court concluded that Santiago-Bautista's guilty plea was freely, voluntarily, and knowingly made. (*See id.* at Pg. ID 135.) The attorneys also denied that they had knowledge of any threats or promises not made part of the record, and they agreed that the court complied with the court rules during the plea. (*See id.*)

The court then – for a third time – ensured that Santiago-Bautista understood the terms of his plea agreement, including the agreed-upon term of incarceration:

> The Court: Sir, you fully understand the consequences? You will serve a minimum of 10 years of incarceration up to 15 years, upon release you will be subject to lifetime electronic monitoring, and you are also subject to deportation or immigration consequences. Do you understand that?
>
> The Defendant: Yes, your Honor.
>
> The Court: Do you wish me to accept your plea of guilty?
>
> The Defendant: yes, your Honor.
>
> The Court: Do you have any questions about the consequences at all?
>
> The Defendant: No, your Honor.

(*Id.* at Pg. ID 135-36.)

At Santiago-Bautista's sentencing, the trial court again began by swearing in an interpreter. (*See* ECF #8-4 at Pg. ID 140-41.) Santiago-Bautista's counsel then told the court that while the pre-sentence report indicated that the sentence guidelines were scored for a minimum sentence of between 12 and 24 months in custody, the

plea agreement called for a "10-to-15 year sentence." (*Id.* at Pg. ID 141-42.). Santiago-Bautista's counsel affirmed that the pre-sentence report was interpreted into Spanish for Santiago-Bautista, and counsel did not note any errors in that report. (*See id.* at Pg. ID 142.)

During Santiago-Bautista's allocution, the interpreter read a letter Santiago-Bautista wrote in which he asked to be deported as soon as possible because all of his family was in Mexico. (*See id.* at Pg. ID 143.) The court then imposed the agreed-upon 10-to-15 year sentence. (*See id.* at Pg. ID 144.) After the trial court issued its sentence, it told Santiago-Bautista that the sentence was "not a departure from the guidelines because it was part of the plea agreement." (*Id.* at Pg. ID 145.) Santiago-Bautista answered, "Okay, Fine." (*Id.*) Santiago-Bautista did not raise any objection to his sentence at that time, nor did he tell the trial court that the sentence departed from his sentence agreement.

Following sentencing, Santiago-Bautista, acting through appellate counsel, filed a motion with the trial court to withdraw his plea and for resentencing. (*See* ECF #8-5.) Santiago-Bautista argued, among other things, that he was entitled to withdraw his plea because he believed that the sentence agreement called for a sentence of 10-to-15 months, not 10-to-15 years. (*See id.* at Pg. ID 149.) He also argued that the sentence was disproportionally harsh. (*See id* at 149-50.)

In response to Santiago-Bautista's motion, the prosecutor argued that the sentence agreement called for such a stiff sentence because the evidence against Santiago-Bautista was strong:

> I do just have to indicate that by way of background, this is a case where a police officer dropped the defendant off at the victim's house. She was seven minutes later found in bed with the defendant. The father walked in as well as the police officer walked in the bedroom while they were in bed and he made a statement to the officer, I thought she was 13 or 14. Just with that background, this is a very good case. [….] She's under 13 years of age, and it was a very good factual case. As a result of that, we offered a criminal sexual conduct in the second degree with the understanding he'd get 10 to 15 years.

(*Id.* at Pg. ID 151-52.) The prosecutor further asserted that he had a Spanish-speaking prosecutor in his office listen to a recording of the plea proceeding, and that prosecutor confirmed that Santiago-Bautista's interpreter told Santiago-Bautista three different times that the agreed-upon sentence was 10-to-15 years, not 10-15-months. (*See id.* at Pg. ID 151-52.) The prosecutor did acknowledge that on one occasion the interpreter said that the sentence would be 9-to-15 years, but at no time did the interpreter tell Santiago-Bautista the sentence would be 10-to-15 months. (*See id.*) The prosecutor also indicated that trial counsel visited Santiago-Bautista at the jail with the interpreter several times to discuss the plea agreement. (*See id.*)

The trial court denied the motion. (*See id.* at Pg. ID 153-60.) The court concluded that Santiago-Bautista was advised multiple times at the plea hearing that

the sentence agreement called for a sentence of 10-to-15 years, not months, and that Santiago-Bautista had indicated his understanding of that sentence. (*See id.*)

Santiago-Bautista thereafter filed an application for leave to appeal in the Michigan Court of Appeals in which he raised the same claims that he presents in his current federal habeas petition:

> I. Defendant's guilty plea was defective because his guilty plea was not voluntarily, knowingly, and intelligently made.
>
> II. Defendant was entitled to have his guilty plea withdrawn due to having ineffective assistance of trial counsel.
>
> III. Defendant was entitled to have his guilty plea withdrawn due to the trial court's failure to comply with the mandatory requirements of MCR 6.302(c)(3).
>
> IV. Defendant was entitled to re-sentencing because the trial court imposed a disproportionate sentence.

(*See* ECF #8-7.)

The Michigan Court of Appeals denied leave to appeal "for lack of merit in the grounds presented." *People v. Santiago-Bautista*, No. 328224 (Mich. Ct. App. Aug. 6, 2015).

Santiago-Bautista subsequently presented these same claims in an application for leave to appeal filed in the Michigan Supreme Court. (*See* ECF #8-8.) That court denied the application in a standard form order. *See People v. Santiago-Bautista*, 875 N.W.2d 219 (Mich. 2016) (Table).

## II

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") requires federal courts to uphold state court adjudications on the merits unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

## III

### A

Santiago-Bautista first claims that his plea was involuntarily because he was told that his sentence agreement was for a 10-to-15 month sentence and not a 10-to-15 year sentence. The trial court rejected the claim on the merits on the basis that Santiago-Bautista was informed multiple times at the plea hearing that the sentence agreement was for a term of 10-to-15 years, and Santiago-Bautista told the court at that time that he understood the agreement. The Michigan Court of Appeals summarily rejected the claim on the merits. The state courts' adjudication of this claim was not unreasonable.

To be valid, a guilty plea must be a voluntary, knowing, and intelligent act "done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748 (1970). Courts must consider all the relevant circumstances when determining whether a plea was voluntary. *See id.* at 749. When a prisoner brings a federal habeas petition that challenges his guilty plea, the state generally satisfies its burden by producing a transcript of the state court proceedings showing that the plea was made voluntarily. *See Garcia v. Johnson*, 991 F. 2d 324, 326 (6th Cir. 1993).

In this case, Santiago-Bautista's claim that he pleaded guilty under the mistaken belief that he would receive a 10-to-15 month sentence is belied by the record of the plea proceeding. As described in detail above, the court informed Santiago-Bautista on at least three occasions at the plea hearing that he would be sentenced to 10-to-15 years. Santiago-Bautista told the court that he understood the sentence each time, and he denied that he had any questions about the plea agreement. And at the sentencing hearing, Santiago-Bautista again raised no objection when the 10-to-15 year sentence was discussed and imposed.

To the extent that Santiago-Bautista now argues that his misunderstanding was the result of a poor translation of the plea proceeding into his native Spanish, the trial court essentially rejected that assertion as a factual matter at the post-conviction hearing on Santiago-Bautista's motion to withdraw his plea and for

11

resentencing. (*See* ECF #8-5 at Pg. ID 157-59.) *See also United States v. Riascos-Suarez*, 73 F.3d 616, 621-22 (6th Cir. 1996) (defendant's limited understanding of English did not provide a sufficient reason for withdrawing a plea when, during the plea hearing, the court took pains to ensure that defendant understood proceedings, an interpreter was present, and defendant stated that he understood his plea) (*abrogated on other grounds* by *Muscarello v. United States*, 524 U.S. 125, 138 (1998)). Santiago-Bautista offered no evidence to the trial court at his post-conviction proceeding, and he offers none here, that the translation was incorrect.

To the extent that Santiago-Bautista asserts that he was misadvised by his trial counsel or simply subjectively misunderstood the sentence agreement, any such misunderstanding was dispelled at the plea hearing where Santiago-Bautista denied that he had any understanding of the agreement other than what was placed on the record. Where, as here, at a plea hearing "the court has scrupulously followed the required procedure, the defendant is bound by his statements in response to that court's inquiry." *Ramos v. Rogers*, 170 F.3d 560, 566 (6th Cir. 1999) (internal quotation omitted). Accordingly, Santiago-Bautista is not entitled to federal habeas relief on his claim that he misunderstood his sentence agreement.

**B**

Santiago-Bautista next claims that he was denied the effective assistance of counsel when his trial attorney allowed him to enter into a sentence agreement that

called for the maximum possible sentence for second-degree criminal sexual conduct, and where the sentencing guidelines for the offense of conviction called for a minimum term between only 12 and 24 months.

In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the United States Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, a petitioner must prove that: (1) counsel's performance fell below an objective standard of reasonableness; and (2) counsel's deficient performance caused the petitioner prejudice. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The petitioner bears the burden of overcoming the presumption that a challenged action might be considered sound trial strategy. *See id.*

The two-part *Strickland* test applies to challenges to guilty pleas based on alleged ineffective assistance of counsel. *See Hill v. Lockhart*, 474 U.S. 52, 58 (1985). With respect to the first prong of the *Strickland* inquiry, the court applies the same standard articulated in *Strickland* for determining whether counsel's performance fell below an objective standard of reasonableness. *See id.* In analyzing the prejudice prong, the court focuses on whether counsel's constitutionally deficient performance affected the outcome of the plea process. "[I]n order to satisfy the

"prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id*. at 59.

Santiago-Bautista's ineffective-assistance claim ignores the fact that Santiago-Bautista was originally charged with first-degree criminal sexual conduct; that the prosecution's evidence on this charge was strong (Santiago-Bautista was found in bed with the victim (*see* ECF #8-5 at Pg. ID 151-52)); and that as originally charged, Santiago-Bautista faced a mandatory minimum sentence of 25 years. *See* MICH. COMP. LAWS. § 750.520b(2)(b). *See also People v. Payne*, 840 N.W.2d 601, 603 (Mich. App. 2014). In light of these circumstances, trial counsel did not act unreasonably when he recommended that Santiago-Bautista plead guilty to second-degree criminal sexual conduct and accept the maximum possible sentence for that offense (a sentence ten years below the maximum on the original charge) even though that sentence exceed the range prescribed under the state sentencing guidelines. Santiago-Bautista's ineffective-assistance claim is therefore without merit, and it does not entitle him to federal habeas relief.

## C

Santiago-Bautista next asserts that the trial court failed to comply with Michigan Court Rule 6.302(c)(3) before it accepted his guilty plea. That rule requires the trial court to explain to a defendant that it is not bound to follow any

14

sentence agreement between the parties, and that if the agreement is not followed, the defendant will be permitted to withdraw the plea. This claim fails for three reasons.

First, "federal habeas corpus review does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991). *See also Watkins v. Lafler*, 517 Fed. App'x 488. 500 (6th Cir. 2013) ("[A] mere violation of state law cannot support a [federal] habeas claim"). Thus, to the extent that Santiago-Bautista complains that the state trial court failed to comply with Michigan law or the Michigan court rules, he is not entitled to federal habeas relief.

Second, Santiago-Bautista has not established that the state trial court violated his federal constitutional rights during the plea colloquy. Under federal law, a plea must be made voluntarily, intelligently, and knowingly. *See United States v. Broce*, 488 U.S. 563, 569 (1989). Santiago-Bautista has not shown that his plea failed to comply with any of these required elements. Indeed, to the extent that Santiago-Bautista argues that he did not understand his sentence and plea agreement, or that he was misled into making that agreement, that claim fails for all of the reasons stated above.

Finally, the state trial court did not depart from the sentence agreement made between the parties. It sentenced Santiago-Bautista to the exact term that he had agreed to when he pleaded guilty. Thus, Santiago has failed to show that any

15

potential error by the trial court with respect to Michigan Court Rule 6.302(c)(3) caused him any prejudice.

For all of these reasons, this claim is without merit, and it does not entitle Santiago-Bautista to federal habeas relief.

**D**

Finally, Santiago-Bautista claims that his 10-to-15 year sentence is disproportionate to the severity of his offense. He notes the sentence was far in excess of the 12-to-24 month state sentencing guideline range, and he says that the trial court failed to articulate any reason to justify the upward departure. Santiago-Bautista maintains that because he had no criminal history and because "the crime itself was [not] of a particularly grievous nature," (*See* ECF #8-6 at Pg. ID 189), a sentence five to ten times longer than the recommended one was not warranted.

A criminal defendant has "no federal constitutional right to be sentenced within Michigan's guideline minimum sentence recommendations." *Doyle v. Scutt*, 347 F.Supp.2d 474, 485 (E.D. Mich. 2004); accord *Austin v. Jackson*, 213 F.3d 298, 300 (6th Cir. 2000). Thus, to the extent that Santiago-Bautista's argument is based upon the fact that his sentence exceeded the sentencing guideline's recommended range, he does not state a cognizable claim for federal habeas relief.

Moreover, "the Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are

'grossly disproportionate' to the crime." *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991), quoting *Solem v. Helm*, 463 U.S. 277 (1983). Santiago-Bautista's sentence of 10-to-15 years is not grossly disproportionate to the offense of sexually molesting a minor female. Thus, to the extent that this claim is based upon the Eighth Amendment, it fails.

As Santiago-Bautista has failed to demonstrate entitlement to federal habeas relief with respect to any of his claims, the Court will deny the petition.

**IV**

In order to appeal the Court's decision, Santiago-Bautista must obtain a certificate of appealability. To obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *See Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). A federal district court may grant or deny a certificate of appealability when the court issues a ruling on the habeas petition. *See Castro v. United States*, 310 F.3d 900, 901 (6th Cir. 2002).

Here, jurists of reason would not debate the Court's conclusion that Santiago-Bautista has failed to demonstrate entitlement to habeas relief with respect to any of

17

his claims because they are all devoid of merit. Therefore a certificate of appealability will be denied.

Although this Court declines to issue Santiago-Bautista a certificate of appealability, the standard for granting an application for leave to proceed *in forma pauperis* on appeal is not as strict as the standard for certificates of appealability. *See Foster v. Ludwick*, 208 F.Supp.2d 750, 764 (E.D. Mich. 2002). While a certificate of appealability may only be granted if a petitioner makes a substantial showing of the denial of a constitutional right, a court may grant *in forma pauperis* status if it finds that an appeal is being taken in good faith. *See id.* at 764-65; 28 U.S.C. § 1915(a)(3); Fed. R.App.24 (a). Although jurists of reason would not debate this Court's resolution of Santiago-Bautista's claims, an appeal could be taken in good faith. Therefore, Santiago-Bautista may proceed *in forma pauperis* on appeal.

V

Accordingly, for the reasons stated above, the Court 1) **DENIES WITH PREJUDICE** Santiago-Bautista's petition for a writ of habeas corpus (ECF #1), 2) **DENIES** Santiago-Bautista a certificate of appealability, and 3) **GRANTS** Santiago-Bautista permission to appeal *in forma pauperis*.

**IT IS SO ORDERED.**

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated: June 26, 2018

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on June 26, 2018, by electronic means and/or ordinary mail.

                                                   s/Holly A. Monda
                                                   Case Manager
                                                   (810) 341-9764